UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CORNELL UNIVERSITY,

           Plaintiff,

     -v-                   3:23-CV-1021

TOMPKINS-CORTLAND COUNTIES
BUILDINNG TRADES COUNCIL,
MAINTENANCE DIVISION,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

LIPPES MATHIAS LLP                    KELLY S. FOSS, ESQ.
Attorneys for Plaintiff               SVETLANA K. IVY, ESQ.
350 Linden Oaks, Suite 215
Rochester, NY 14625

HARRIS, BEACH LAW FIRM                THOMAS P. SMITH, ESQ.
Attorneys for Plaintiff
P.O. Box 580
119 East Seneca Street
Ithaca, NY 14851-0580

BLITMAN & KING LLP                    FREDERICK WESLEY TURNER, ESQ.
Attorneys for Defendant               NATHANIEL G. LAMBRIGHT, ESQ.
Franklin Center - Suite 300
443 North Franklin Street
Syracuse, NY 13204-1415

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

**I. INTRODUCTION**

This case pertains to the sufficiency of an arbitration award. Dkt. No. 1. In August of 2022, defendant Tompkins-Cortland Counties Building Trades Council, Maintenance Division (the "BTC" or "defendant") submitted a grievance against plaintiff Cornell University ("Cornell" or "plaintiff") for purported violations of the parties' collective bargaining agreement stemming from non-union work on a gas main located on Cornell's property. Dkt. No. 1. The parties proceeded to arbitration during which there was an evidentiary hearing and post-hearing briefing. Dkt. No. 1-1. Following arbitration, the arbitrator issued an opinion and award in favor of the BTC (the "award"). *Id*. Specifically, the arbitrator awarded the BTC lost wages and ordered Cornell to cease and desist from entering any future easements on its property that permit non-union labor. *Id*.

On August 21, 2023, Cornell commenced this action to vacate the award pursuant to § 301 of the Labor Management Relations Act (the "LMRA"). Dkt. No. 1. Plaintiff's three-count complaint asserts that the award must be vacated because it (1) does not draw its essence from the collective bargaining agreement between the parties; (2) exceeds the arbitrator's authority; and (3) violates public policy. *Id*. The BTC answered the complaint denying

plaintiff's allegations and asserting a counterclaim to enforce the terms of the award. Dkt. No. 9. At the completion of discovery, the parties each moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Dkt. Nos. 17–18. The matter has been fully briefed, Dkt. Nos. 2, 23, 26–27, and will be considered on the basis of the submissions without oral argument.[1]

## II. BACKGROUND[2]

The BTC is the sole and exclusive bargaining representative of Local No. 241 of the International Brotherhood of Electrical Workers, Local No. 81 of the United Association of Plumbers and Steamfitters, Local No. 277 of the North Atlantic States Regional Council of Carpenters, Local No, 3NY of the Bricklayers & Allied Craftworkers, Local No. 178 of the IUPAT Painter District Council No. 4, Local No.112 of the SMART Twin Tier Sheetmetal Workers, and Local No. 785 of the Laborers International Union of North America. Pl.'s Statement of Mat. Facts ("Pl.'s Facts") ¶ 1; Def.'s Stat. of Mat.

---

[1] Cornell's request for oral argument, Dkt. No. 30, will be denied.

[2] The following facts are drawn from the parties' statements of undisputed material facts and responses pursuant to Local Rule 56.1(b). Though the parties' facts have been summarized together for the sake of brevity, the Court will consider each party's statement of material facts and the corresponding response individually when resolving each party's motion for summary judgment to the extent those facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein. Local Rule 56.1(b) requires the responding party to specifically controvert a statement of material fact in order to deny it and warns that the Court will deem admitted any properly supported fact that the responding party fails to specifically controvert. N.D.N.Y.L.R. 56.1(b). As relevant here, it is insufficient to deny a properly supported fact due to a "lack of knowledge." *See Disability Rights N.Y. v. N.Y. State Police Dep't of Corr. & Cnty. Supervision*, 2024 WL 184248, at *4 n.3 (N.D.N.Y. Jan. 16, 2024) (collecting cases).

Facts ("Def.'s Facts"), Dkt. No. 23-1 ¶ 1. Cornell and the BTC have been parties to, and have renegotiated the terms of, collective bargaining agreements. Pl.'s Facts ¶¶ 2–3. On July 1, 2021, Cornell and the BTC entered into another agreement (the "CBA") for a five-year term that expires on June 20, 2026. Pl.'s Facts ¶ 4; Def.'s Stat. of Mat. Facts ("Def.'s Facts"), Dkt. No. 23-1 ¶ 2. The CBA provides the BTC with exclusive jurisdiction over craft maintenance at Cornell. Def.'s Facts ¶ 7.

Cornell holds a wide breadth of real estate and grants one or two new easements each year. Pl.'s Facts ¶ 7. Sometimes these easements are granted to public utilities. *Id*.

In May 2022, Cornell granted a permanent easement to NYSEG to replace a gas main (the "work at issue"). Pl.'s Facts ¶ 13. NYSEG is not a party to the CBA between Cornell and the BTC. *Id*. ¶ 16. Though Cornell owns the property that was subject to the easement, NYSEG owns and maintains the gas main.[3] *Id*. ¶ 15. NYSEG hired and paid a subcontractor to do the repairs. *Id*. ¶¶ 17–18; Def.'s Facts ¶¶ 4–5. The subcontractor is non-union

---

[3] The BTC denies that NYSEG owns the gas main that was subject to the work at issue. Def.'s Resp. to Pl.'s Facts, Dkt. No. 22 ¶ 15. However, defendant has failed to specifically controvert that NYSEG owned the gas main and instead asserts that Cornell owned the property that was subject to the easement. *Id*. Here, Cornell's ownership of the property subject to the easement does not controvert that NYSEG, a public utility company, owned the gas main located underneath that property. Accordingly, the Court deems this fact admitted.

and does not have an agreement with any of the unions listed or subject to the CBA. Def.'s Facts ¶ 6.

On August 10, 2022, the BTC submitted a grievance. Pl.'s Facts ¶ 21; Def.'s Facts ¶ 8. Cornell denied the grievance and the grievance proceeded to mediation. Pl.'s Facts ¶¶ 22–23; Def.'s Facts ¶ 9. When mediation was unsuccessful, the grievance proceeded to arbitration. Pl.'s Facts. ¶ 24; Def.'s Facts ¶ 10. An evidence hearing was held on March 2, 2023. *Id*. ¶ 25; Def.'s Facts ¶ 11.

During the hearing the parties stipulated that the grievance was arbitrable and properly before the arbitrator. Def.'s Facts ¶ 12. The parties then presented exhibits that were entered into evidence. Pl.'s Facts ¶ 25; Def.'s Facts ¶ 13. Following the evidence hearing, the parties submitted post-hearing briefs. Pl.'s Facts ¶ 27. Neither party submitted objections to the contents of the opposing party's brief. *Id*. ¶ 30. The arbitrator issued an opinion and award on May 23, 2023. *Id*. ¶ 32; Def.'s Facts ¶ 14.

The award orders Cornell to "make whole" the affected members of the BTC for lost work and to cease and desist from "entering into any future easements that authorize non-union contractors to perform bargaining unit work." Def.'s Facts ¶ 14.

Following the issuance of the award, Cornell's legal counsel informed the BTC's legal counsel that Cornell lacked the necessary information for

calculating the damages for "lost work" awarded to the BTC in the award. Pl.'s Facts ¶ 33. In response, the parties scheduled a meeting to discuss the question of damages for "loss of work." *Id.* ¶ 34. The parties met on August 17, 2023. *Id.* ¶ 34.

During the meeting, Cornell's legal counsel informed the BTC's legal counsel that Cornell intended to file a lawsuit challenging the award. Pl.'s Facts ¶ 35. In response, the BTC's legal counsel wrote to the arbitrator to request that he maintain jurisdiction while the parties litigated the matter in federal court. *Id.* ¶ 36. The arbitrator replied that he would retain jurisdiction until ninety days after the matter is fully resolved. *Id.* ¶ 37.

When the award was issued, the Town of Ithaca, New York (the "Town of Ithaca" or, the "Town") was in the process of negotiating an easement with Cornell to access and work on a sewer main located on Cornell's property. Pl.'s Facts ¶ 43. However, the Town of Ithaca will not enter into an easement with Cornell that requires the Town to hire the BTC's workers for a public works project—as required by the award. *Id.* ¶ 44. In response, the Town has commenced an emergency eminent domain proceeding to acquire the necessary easements to repair its sewer main. *Id.* ¶ 45.

Similarly, the City of Ithaca, New York (the "City of Ithaca" or, the "City") was negotiating an easement with Cornell to access and work on the City's sewer mains located on Cornell's property when the award was issued. Pl.'s

Facts ¶ 48. Like the Town, the City will not enter into an easement with Cornell that requires the City to hire the BTC's workers for its projects. *Id.* ¶ 49.

## III. LEGAL STANDARD

Under Rule 56, summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In reviewing the motion, the district court must "draw all reasonable inferences against the party whose motion is under consideration." *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022) (citation omitted).

## IV. DISCUSSION

Cornell and the BTC have filed cross-motions for summary judgment pursuant to Rule 56. Pl.'s Mem., Dkt. No. 17-32; Def.'s Mem., Dkt. No. 18-2. Cornell asks the Court to vacate the award while the BTC asks the Court to confirm and enforce the award. Pl.'s Mem. at 7–8; Def.'s Mem. at 12. The parties have invoked this Court's jurisdiction pursuant to § 301 of the LMRA.

Pl.'s Mem. at 7–8; Def.'s Mem. at 12. The Court will address the parties' motions in turn.

## A. **Cornell's Motion for Summary Judgment**

Cornell has moved for summary judgment pursuant to Rule 56. Plaintiff is asking the Court to vacate the award. Pl.'s Mem. at 7–8. The BTC opposes plaintiff's motion for summary judgment and has cross-moved for summary judgment confirming the award and directing plaintiff to comply with the terms of the award. Def.'s Opp'n, Dkt. No. 21 at 8–9; Def.'s Mem. at 5.

"Section 301 of the LMRA grants federal courts jurisdiction over petitions brought to confirm labor arbitration awards." *Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am. v. Homeric Contracting Co. Inc.*, 2025 WL 315827, at *2 (S.D.N.Y. Jan. 28, 2025) (citing *Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998)). But that jurisdiction is limited. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (cleaned up) ("Limited judicial review of arbitration awards "maintains arbitration's essential virtue of resolving disputes right away."). Once a grievance has proceeded to arbitration, courts must enforce "final and binding grievance determinations and cannot 'reweigh the merits of [a] grievance.'" *Control Network Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Loc. Union No. 236*, 145 F. Supp. 3d 161,

164 (N.D.N.Y. 2015) (quoting *Gen. Drivers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963)).

That is not to say that all arbitration awards must be enforced by the reviewing court. "[C]ourts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC*, 569 U.S. at 568 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995));[4] *Unite Here Loc. 100 v. Westchester Hills Golf Club, Inc.*, 161 F. Supp. 3d 262, 265 (S.D.N.Y. 2016) (citing *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 214 (2d Cir.2002)) (holding that the "arbitrator's 'factual findings and contractual interpretation are not subject to judicial challenge.'"); *Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am. v. Homeric Contracting Co. Inc.*, 2025 WL 315827, at *2 (S.D.N.Y. Jan. 28, 2025) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)) ("[D]istrict courts 'are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'").

Cornell argues that the award must be vacated because (1) the arbitrator exceeded his authority; (2) that the arbitrator manifestly disregarded

---

[4] Both "[t]he Supreme Court and the Second Circuit have recognized that the LMRA imposes 'materially the same' standard for review of an arbitral award as does the Federal Arbitration Act . . . [and] cases decided under the FAA are therefore instructive in the LMRA context." *Unite Here Loc. 100 v. Westchester Hills Golf Club, Inc.*, 161 F. Supp. 3d 262, 264 (S.D.N.Y. 2016) (citing *Am. Postal Workers Union, AFL–CIO v. U.S. Postal Serv.*, 754 F.3d 109, 112 n. 4 (2d Cir. 2014)).

applicable law; and (3) the award violates public policy. Pl.'s Mem. at 7–8. The Court will address Cornell's arguments in turn.

1. **<u>Essence of the Agreement</u>**

*First*, Cornell argues that the arbitrator exceeded his authority when he issued an award that imposes a restriction on plaintiff's right to alienate property because the CBA does not impose such a restriction on Cornell. Pl.'s Mem. at 14–15. Cornell further argues that the arbitrator exceeded his authority to interpret the CBA this way because the CBA did not grant the arbitrator power to add, subtract, or modify the terms of the CBA. Pl.'s Mem. at 15.

Where a party seeks to set aside an arbitration award because the arbitrator exceeded his authority, "vacatur is proper if the award 'does not draw[ ] its essence from the collective bargaining agreement' but reflects instead 'the arbitrator's own brand of industrial justice.'" *New York & Presbyterian Hosp. v. New York State Nurses Ass'n*, 2024 WL 5107586, at *4 (S.D.N.Y. Dec. 13, 2024) (quoting *N.Y.C. & Vicinity Dist. Council of the United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus., Inc.*, 826 F.3d 611, 618 (2d Cir. 2016)). That means the task of the reviewing court "is simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Nat'l*

*Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 537 (2d Cir. 2016) (quoting *Misco, Inc.*, 484 U.S. at 36 (1987)).

Upon review, the evidence in the record does not support Cornell's contention that the arbitrator exceeded his authority when he restrained its ability to enter future easements that did not comply with the terms of the CBA. It is undisputed that the CBA confers exclusive jurisdiction to the BTC for what the CBA defines as "craft maintenance" at Cornell. Ex. 1 to Buffum Decl., Dkt. No. 17-2 at 5–6. It is also undisputed that Cornell owns the property subject to the easement with NYSEG and the work at issue. Pl.'s Facts ¶ 15. The arbitrator made a finding that the work at issue on the gas main constituted "craft maintenance" as defined by the CBA, Cornell violated the terms of the CBA. Ex. 18 to Buffum Decl., Dkt. No. 17-19 at 18–20. The arbitrator further concluded that by granting an easement to NYSEG to do the work at issue that Cornell violated the terms of the CBA. *Id*. Therefore, the arbitrator interpreted and applied the express terms of the CBA when he made his determination that Cornell violated the CBA. Cornell merely takes issue with the arbitrator's interpretation of the CBA and factual determination regarding the BTC's exclusive jurisdiction over the work at issue. These issues are plainly not within the Court's jurisdiction to review and may not serve as a basis to vacate the award. *Unite Here Loc. 100* 161 F. Supp. 3d at 265 (S.D.N.Y. 2016) (citing *Westerbeke Corp.*, 304 F.3d at 214 (2d

Cir.2002)) (holding that the "arbitrator's 'factual findings and contractual interpretation are not subject to judicial challenge.'").

Therefore, Cornell has not marshalled sufficient evidence from which a reasonable fact finder could conclude that the arbitrator exceeded his authority.

### 2. <u>Manifest Disregard</u>

Next, Cornell argues that the award must be vacated because the arbitrator manifestly disregarded New York law.[5]  Pl.'s Mem. at 14.  Cornell argues that the arbitrator disregarded New York law when he interpreted the CBA in the BTC's favor and enforced it against Cornell.  Pl.'s Mem. at 14–16.  Specifically, Cornell argues that the arbitrator disregarded New York law which requires strict construction of contractual provisions purporting to restrict the free alienation of property against the party seeking to enforce it.  *Id.* at 14–16.

A motion to vacate an arbitration award due to the arbitrator's manifest disregard of applicable law the movant must show (1) "the law that was allegedly ignored by the arbitrator must be clear and in fact explicitly applicable to the matter before the arbitrator[;]" (2) "the law was in fact

---

[5] Though Cornell characterizes this argument as another way that the arbitrator exceeded his authority, in the Second Circuit a separate legal standard governs motions for vacatur due to the arbitrator's purported manifest disregard of applicable law.  Accordingly, the Court will analyze this argument as distinct and apply the governing legal standard.

improperly applied, leading to an erroneous outcome[;]" and (3) "that the arbitrator knew of the law's existence and its applicability to the problem before him, as this subjective knowledge is required for an arbitrator to intentionally disregard the law." *Conmed Corp. v. First Choice Prosthetic & Orthopedic Serv., Inc.*, 651 F. Supp. 3d 605, 623 (N.D.N.Y. 2023), *reconsideration denied,* 2023 WL 3647908 (N.D.N.Y. May 25, 2023) (cleaned up). "Demonstrating manifest disregard of the law is a heavy burden, and vacatur on such grounds is properly limited to those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Id.* (cleaned up); *Constr. Council 175, Util. Workers of Am., AFL-CIO v. New York Paving, Inc.*, 708 F. Supp. 3d 221, 229 (E.D.N.Y. 2023) (cleaned up) ("A court may not vacate an arbitration award based on a simple error in law or a failure by the arbitrator to understand or apply it but rather only when the arbitrator intentionally defied the law.").

Upon review, Cornell has not marshalled sufficient evidence that the arbitrator manifestly disregarded New York law. As an antecedent matter, Cornell mischaracterizes the award as restricting its right to alienate its property. Evidence in the record—namely the plain text of the award itself—does not support Cornell's notion that the award restricts its alienation of property. Rather, it limits the way it may do so such that it must comply with the contracted terms of the CBA. *Supra*. Next, Cornell asks the Court

to take one step further and conclude that by issuing an award that orders Cornell not to enter into future easements that do not comply with the terms of the CBA, that the arbitrator interpreted the CBA to permit such a restriction.

Even following Cornell's logic that the arbitrator did interpret the CBA to restrict Cornell's right to alienate its property, Cornell's argument that the arbitrator manifestly disregarded New York law still fails. Cornell has not identified New York law that was clear and in fact *explicitly* applicable to the matter before the arbitrator nor offered any evidence of the arbitrator's defiance of applicable law. Pl.'s Mem. at 14–16. Cornell cites *Petrello v. White*, 507 F. App'x 76, 79 (2d Cir. 2013) (summary order) for this proposition that New York law required the arbitrator to construe the restrictive covenants in the CBA against the BTC. *Id.* However, in *Petrello*, the Second Circuit held summarily that though New York law generally requires that "[w]here the language used in a restrictive covenant is equally susceptible to two interpretations, the less restrictive interpretation must be adopted[,]" that rule ceases to apply where there is extrinsic evidence of the parties' intents that resolves the ambiguity. *Petrello*, 507 F. App'x at 78. It is undisputed that the parties presented exhibits during the evidentiary hearing. The arbitrator was faced with extrinsic evidence that impacted the manner in which the CBA should have been interpreted. Thus, the law did

not explicitly apply to the CBA. Nor has Cornell offered the Court any evidence that the arbitrator had subjective knowledge of the law and chose to defy it. If that were not enough to deny relief, as discussed above, the arbitrator's interpretation of the CBA is not subject to judicial review. *Supra*.

Therefore, Cornell has not marshalled sufficient evidence from which a reasonable fact finder could conclude that the arbitrator manifestly disregarded applicable law.

### 3. **Public Policy**

Finally, Cornell argues that the award must be vacated because it violates public policy favoring unrestricted alienation of property, permitting parties to a collective bargaining agreement to operate their businesses, and allowing municipalities to seek easements from private parties to conduct emergency repairs on public utilities. Pl.'s Mem. at 21–25. The BTC argues in opposition that Cornell has failed to identify an "explicit, well defined, and dominant" public policy and instead describes "supposed public interest." Def.'s Opp'n. at 20–21. Specifically, defendant argues that plaintiff has failed to identify a law, regulation, or legal precedent that states a party may not agree to restrict its ability to alienate its property or that general safety concerns demand vacating the award. *Id*. at 22, 24.

A reviewing court's authority to vacate an arbitration award on public policy grounds, "is narrowly circumscribed 'to situations where the contract

as interpreted would violate some explicit public policy that is well defined and dominant . . . ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *New York & Presbyterian Hosp. v. New York State Nurses Ass'n*, 2024 WL 5107586, at \*4 (S.D.N.Y. Dec. 13, 2024) (quoting *Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 45 (2d Cir. 1997)).

Cornell has not carried its burden to identify a "well defined" and "dominant" public policy. First, Cornell's argument that the award violates New York's public policy favoring the free alienation of property will be rejected. As discussed, the award does not prevent Cornell from freely alienating its property, it only limits the manner in which it may do so while the CBA remains in effect. Cornell appeals to the Court's sense of justice without offering precise authority justifying setting aside the award on this basis in these circumstances. Instead, Cornell points to New York courts' *general* preferences for the free alienation of property. This is not enough. *See New York & Presbyterian Hosp.*, 2024 WL 5107586, at \*4. Therefore, this argument will be rejected.[6]

Next, Cornell argues that safety concerns that arise from preventing public utilities future easements demand judicial intervention. But the

---

[6] Cornell again points to New York law requiring contractual provisions that restrict the alienation of property to be strictly construed against the party seeking to enforce it. Pl.'s Mem. at 22. But as discussed above, this argument fails.

undisputed facts demonstrate that public utilities may and already have utilized eminent domain proceedings to receive access in true emergencies. Pl.'s Facts ¶ 45. Thus there are other methods aside from judicial intervention available to mitigate the issues Cornell foresees. Further, as discussed, the award only requires Cornell to comply with the terms of the CBA—which only runs until 2026. If those terms prove to be cumbersome for Cornell it is free to elect not to renew the CBA with the BTC. Therefore, vacatur is not warranted due to violations of public policy.

Therefore, Cornell has not marshalled sufficient evidence from which a reasonable fact finder could conclude that the award violates public policy. Accordingly, Cornell's motion for summary judgment vacating the award will be denied.

### B. The BTC's Motion for Summary Judgment

The BTC has moved for summary judgment pursuant to Rule 56. Plaintiff is asking the Court to confirm the award. Def.'s Mem. at 12. The BTC argues that the award must be confirmed because (1) the arbitrator acted within the scope of his authority; (2) the award draws its essence from the CBA; and (3) the award does not violate public policy. *Id.* For the reasons discussed above, the BTC's motion for summary judgment confirming the award will be granted. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d

Cir. 2006) (quotation omitted) ("[T]he court 'must grant' the award 'unless the award is vacated, modified, or corrected.'").

The BTC has also requested attorney's fees and costs in connection with this action.[7]  Def.'s Mem. at 17.  The BTC argues that though § 301 of the LMRA does not explicitly provide for attorney's fees or costs, the Court may still award these fees and costs pursuant to its inherent equitable discretion.  *Id*.  Defendant argues that an award of fees and costs in this case is appropriate because no plausible justification for Cornell's refusal to abide by the award exists.  *Id*. at 18.  Defendant further argues that an award of fees and costs in this action would also be consistent with the Supreme Court's preference for private resolution of labor disputes and will incentivize Cornell and other employers to abide by their promise to adhere to final, binding arbitration awards where no justification for vacatur of an award exists.  *Id*.

Upon review, the BTC's request for attorney's fees and costs will be denied.  Though the BTC is correct that vacatur in this case is not warranted, Cornell's claim is far from implausible.  Therefore, the BTC is not entitled to a fee award for the purpose of penalizing Cornell for bringing a claim for vacatur.  The BTC's argument that fees in this case would dissuade other

---

[7] The BTC has sought leave pursuant to Rule 54 to file a separate application for attorney's fees within fourteen (14) days of the entry of judgment in this case.  Def.'s Mem. at 18 n.5.

employers from bringing vacatur actions is similarly unpersuasive.[8]  Finally, the BTC has not substantiated a claim for fees or costs.  Accordingly, this request will be denied without prejudice.

## V. **CONCLUSION**

In sum, Cornell has not marshalled sufficient evidence at this posture to warrant vacatur of the award.  Therefore, Cornell's motion for summary judgment vacating the award will be denied.  Cornell's arguments boil down to dissatisfaction with the possible negative downstream consequences of the award.  And while the terms of the award may appear to be somewhat of an absurd result for Cornell, it also appears to be precisely the result the parties contracted for.  Cornell and the BTC are sophisticated entities who contracted for the BTC to retain exclusive rights to perform craft maintenance at Cornell without any carveouts for public utility companies *and* for arbitration of the parties' disputes.  The CBA remains in force until 2026.  At that time, if Cornell finds that the terms of the CBA have encumbered it in an undesirable way, it is free to renegotiate or simply not renew the CBA.

---

[8]  Further, the CBA states that the parties shall bear their own costs during arbitration.  While the CBA does not cover federal litigation challenging the award, the Court notes that the essence of the CBA suggests the parties intended to bear their own costs in the event of a dispute over the CBA and/or its terms.

Next, in the absence of vacating or otherwise modifying the award, the BTC's motion for summary judgment confirming the award will be granted. Finally, the BTC's request for attorney's fees and costs will be denied. The BTC has not substantiated nor justified a fee award in this case because though the BTC is correct that Cornell is not entitled to relief—their claim is fair from implausible.

Therefore, it is

ORDERED that

1. Cornell's motion for summary judgment is DENIED; and

2. The BTC's motion for summary judgment is GRANTED;

3. The award is CONFIRMED; and

4. The BTC's request for attorney's fees and costs is DENIED without prejudice.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: March 31, 2025
      Utica, New York.

David N. Hurd
U.S. District Judge